Okay, we will now go to Campos-Hernandez. This is set for 15 minutes. I'm not sure if we need the 15 minutes, so if you don't need it, don't use it. Thank you. May it please the Court, Louis Gordon on behalf of the petitioner Manuel Campos-Hernandez. I would like to reserve five minutes for rebuttal. Mr. Campos is a who entered the United States without inspection in 1991 when he was about 14 years old. He's married to a U.S. citizen. He has a lawful permanent resident mother. He's also the victim of a kidnapping and has an application pending with USCIS for a U visa. This case comes to the Court to decide the issue as to whether Mr. Campos-Hernandez is eligible for relief under NACARA, the Nicaraguan and Central American Adjustment Act. And the specific issue, which we asked the Court to decide, deals with whether his first act, which would make him removable, or his last act, which would make him removable, starts the 10-year period for physical presence in the United States. We argue that it is the first act. The plain meaning of the statute says following the commission of an act or assumption of a status. Congress did not say any act or the last act. Right, but it does say an act. It says an act. Why can't that apply to the last act? Congress could have used that term. Well, they could have, but they said an act. Why couldn't we just interpret that as any act? Well, counsel for the respondent attorney general had submitted a 28-J letter recently, which cited the case Fong v. INS, which is a precedent of this Court from 1962, where this Court dealt with a similar statute, the old suspension of deportation statute. That's the old Fong case. Yes. Right, which the BIA has now disagreed with, and we are not bound by our prior decision unless it satisfies certain conditions. Well, first of all, the BIA decision, which was entered in this case, didn't rely on the BIA precedent decision. But does that matter? Don't we have case law specifically saying it doesn't matter? That's correct, and if so, we would request that the case be remanded for the Board to apply that case in the first instance. What is there to apply, I guess? I mean, this is sort of an on-off spigot, isn't it? Okay, so I would say this. The immigration judge had earlier said that the statute was unambiguous, and the Board of Immigration Appeals then said, no, we find it's not unambiguous, and they determined that it goes from the last act. Right. Okay. You concede that if it goes from the last act, that the petition should be denied? If it goes from the last act, yes, but we don't concede that. I mean, I just think they're in a very unfortunate position at this point because of the interceding BIA decision to which we owe Chevron deference, no? We would argue that you still would have Skidmore deference, and it's not persuasive. Why? Tell me why. Because we didn't have the opportunity to address that. But what would you address about it? I mean, as I say, it's an on-off spigot. You just said that if it's 10 years, you lose, and they said it's 10 years. I mean, if it runs from the last... Let me also address this point. I don't think that the board's decision is reasonable, and there's one very important thing the board... All right. I don't remember what the timing was here. Was your brief before or after Castro-Lopez? Before. So are you asking for the opportunity to brief the reasonableness of Castro-Lopez under Chevron? We would ask that for this court or for a remand to brief it under the board. Counsel, the phrase any act, or I'm sorry, the phrase, what is it, an act, it doesn't appear in the statute. It appears in the regulation, right? We're talking about 1240-66. But I think 1018 U.S.C. 1101 uses that phrase, an act, as well. Anyway, are you asking for an opportunity to brief something that you didn't have an opportunity to brief? I would like that opportunity, yes, Your Honor, but I wanted to make one other important point for you to... You could have briefed it in the meanwhile or asked for an opportunity to brief it, and you didn't. When was Castro-Lopez decided? It was decided in 2015. 15, right. Now, but I want to make one important point about Castro-Lopez. The board, there's a difference between the NACARA Act and the 244A suspension of deportation that this court looked at back in 1962 in Fong versus INS. And that difference is the NACARA Act was enacted by Congress specifically as a relief act. And the board doesn't really address that aspect of it being a relief act. And if we use the same reasoning that this court used in Fong, we could find that Castro-Lopez decision is not a reasonable construction in light of the ameliorative aspect of NACARA. But Castro-Lopez was NACARA. Castro-Lopez dealt with NACARA, but the board doesn't talk about the ameliorative aspect of it. And the Fong case talked about the harsh consequences of deportation and the ameliorative concept of the suspension of deportation. And as I know, we're not, or as you've noted, we're not bound by it. However, if we go back and look, there's a big distinction between NACARA and the old suspension of deportation. In fact, NACARA was enacted after Congress eliminated suspension of deportation and replaced it with cancellation of removal. So there's a very specific reason for NACARA, and it was for a certain people from certain countries, including El Salvador. So that's why we believe that the interpretation in Castro-Lopez is not reasonable, even under Chevron deference. Well, that is an unreasonable reading of the words of the regulation or the statute. In light of the, it's an unreading of the words in light of the, in light of the purpose of NACARA. And that's the same reasoning this court used in Fong, except here, a fortiori, we have a more ameliorative statute. And if this court could grant in Fong, then with a much more ameliorative statute, it could grant here. Okay. Do you want to reserve your time? Yes, Your Honor. Thank you. Is there any pertinent difference here? Oh, go ahead. State your appearance, please. Good morning, Your Honors. May it please the Court? My name is Kosei Yugimori, and I represent the United States in this case. Is there any relevant difference between the statute and the regulation in this instance? I mean, theoretically, it makes a difference whether we're talking Chevron and our difference. The only reason that may make a difference is that our difference is in some disrepute these days. Maybe Chevron deference, too, but certainly our difference. There is no substantive difference between the statute and the regulation. The Board has— What do you think the Board was doing in Castro-Lopez? In Castro-Lopez— Was it interpreting the regulation or the statute? My understanding is that it was interpreting the statute, which the Board described as essentially identical in substance to the regulation. And that's the case under the regular NACARA statute and also the heightened NACARA statute that's at issue in this case. And this petition for review should be denied because Petitioner is statutorily ineligible for the relief. He required 10 years of continuous physical presence from his 2008 conviction, and at the time of the Board's decision, he clearly did not have 10 years. Even today, he still does not have 10 years. So he's just statutorily ineligible for this type of relief. Petitioner argues that the 10 years should start from the 2003 conviction, but whether the 10 years should begin from the 2003 or 2008 conviction has pretty much been resolved by the Board's published decision in matter of Castro-Lopez, which— What do you mean by pretty much? Well, there were issues that were left open by the Board that are not relevant to this case, for example, whether to count 10 years from the act or the conviction itself. It's not relevant here because at the time of the Board's decision, it wouldn't have mattered. His April 2008 act and his June 2008 conviction wouldn't have made a difference in this case, Your Honor. And as far as— Is he eligible today? Or would he be eligible today? Has it now been 10 years? It is not. It is not, Your Honor. He still remains statutorily ineligible for special rule cancellation or removal. Now— What was the date of the last act? As far as— Use the date of the act of 2008. Right. According to the record, that's April 2008 was the date of the commission of the crime. The conviction was June 2008. But you also measure it from the time in which you charge him with being deportable. In other words, in another two months, this doesn't become moot just because he's been here 10 years since the 2008— Oh, right. No, it does not become moot. The Board's decision is in 2013. The Board at the time properly decided the case, and there's no reason to grant a petition for review of a correct Board decision. That is not legally erroneous. And as far as a matter of Castro-Lopez is concerned, this Court has recognized in the Fong case that the relevant language is, in fact, ambiguous. And where there is ambiguous language, this Court must defer to the Board's reasonable interpretation of that language. And as the Board has explained, the 10-year period is reasonable to be calculated from a period from the last deportable offense because the 10-year period is a probationary period. It's a testing period during which time an applicant should not engage in any behavior that would render him removable from the United States. What do we do with the Fong case? I mean, that is a precedent of our Court. Why don't we still have to follow it? Well, Fong is no longer controlling here, Your Honor. First, we're talking about a different statute. And the Fong case is important because it shows that the basically identical language this Court has identified already as ambiguous. And so where there is ambiguity in the statute, then the Court must defer to the Board's reasonable interpretation of that statute.  And if one were to adopt Petitioner's position, there would be situations where persons would be permanently ineligible for special rule cancellation. That is, if the 10-year period were to begin in 2003 and end in 2013, he must not only show 10 years of continuous physical presence but good moral character during that period. So if a person were, say, convicted of a drug conviction, such as in this case, or otherwise demonstrated a lack of good moral character, that 10-year period starts and ends and forever bars that person from cancellation. I'm sorry. I absolutely do not understand that. I have to agree. The 10 years runs the other way, right? I mean, once the 10 years are up, he's now like any other person. Right. Once the 10 years are up, so Petitioner's argument is that the 10 years begins at the very moment of the very first thing, and then it ends, and then it doesn't start again just because he commits another crime. OK. So the 10-year period not only is required for continuous physical presence, but the alien must also have good moral character during that time. And so if he does not have good moral character during that time, then he doesn't get another 10-year period, Your Honor. That's it. His argument is that the 10 years only relates to the period that we measure his continuous physical presence, which if we measured it from his first crime would be 2003. Therefore, it expired in 2013, which is the same time the board charges him. So if we adopt his theory, he's satisfied the 10 years continuous presence. But there's an additional requirement that during that 10-year period, he must have shown good moral character. And since during that period he had a subsequent conviction, he can't satisfy it in any event. Right. If he cannot show good moral character, he would be permanently barred. In the case of, let's say, he gets another shot, 10 years from 2008, and he stays out of trouble, he shows good moral character. Well, the fact that he lacked good moral character in 2003 would not statutorily bar him from the relief. So the board's decision is, in fact, consistent with the congressional intent of NACARA to be a relief-type application. It is consistent with the board's interpretation of almost identical statute in the suspension statute. The reason why, as my understanding of the way this would work with regard to our prior precedent, if Fong had said, this is our statutory interpretation, period, it would still be binding on us, even if the board thought there was a different, reasonable one. And the only reason why you can come here and tell us to ignore Fong is because Fong recognized an ambiguity. Is that right? Yes. And that's brand X and so on. Yes. Now, did you brief any of this? I mean, that part of it, what we do with Fong? No, Your Honor. I did submit a 28. He never briefed anything about Campos-Lopez, and I don't particularly see it going anywhere. But should he have the opportunity to do that? He hasn't done it. Well, the government would not object to an opportunity to brief the case. But it should be noted here that the petitioner in his 28th. You both might have been a little more proactive about it, actually. I mean, I know you sent just Castro-Lopez, but you didn't deal with Fong until the very last minute, and you didn't really deal with it exactly. Right. Well, a matter of Castro-Lopez was decided after briefing in this case. I understand that. And the petitioner in his 28-J letter did not contest the validity of that decision. He sought a remand for- I have a validity question. I mean, it may be applied everywhere else but here. But the question is, what do we do with Fong? Well, the government's position is, as Your Honor stated, that the operative language is ambiguous, and therefore the board's decision in matter of Castro-Lopez should be deferred to because it is a reasonable decision that, in fact, other circuits have rejected. At least four circuits have ruled in a way that is contrary to Fong. Sure. That just gives us a circuit conflict. But that doesn't change the obligation of this panel unless you've got a Brand X situation. Yes. Yes. And the government's position is that Fong shows that this is a- Brand X hasn't been briefed by anybody here, has it? It has not, Your Honor. Was it mentioned in your 28-J letter? That was the argument, yes. When we cited to Fong, the argument was that at the time of Fong, the rule- No, it wasn't cited. Brand X was not cited, but the government's position was that because the Fong decision recognized the ambiguity, and at the time of the Fong decision, the Chevron principles were not well-established, that now that it is well-established, that the court must defer to the board's decision in Castro-Lopez. That was the government's position. The government would not object- Actually, your position in your letter was that we should ignore Fong because Fong was decided prior to the now settled rule that deferences over to the board's reasonable construction of an ambiguous judgment. Yes. That's a different point. I don't know why that would matter, that it was decided. That point isn't a very good one about why we should be ignoring Fong. Well, in Fong- Overruling Fong, in essence. Well, in Fong, what the court recognized was the language was ambiguous and stated that because it's ambiguous, people- I'm just pointing out that's not what you said in your 28-J letter. You didn't say anything about Fong's found it ambiguous. Well, I regret there may have been a lack of clarity, but the position is that Fong demonstrates that the language is ambiguous. Because it is ambiguous, the court should defer to Castro-Lopez. And at the time of Fong, the court did not have Chevron yet. That won't be decided for- And that's relevant because why? Excuse me? And that's relevant because why? Well, because in Fong, the court said it was ambiguous, but because it didn't have Chevron, it- But it also didn't have a presidential decision. Yes, but the court in Fong was not- There was nothing it could have deferred to anyway, even if it had Chevron at that point. Is that right? No, the board's position prior to Fong- It's the position, but it didn't have a presidential opinion, which would have been entitled to Chevron deference at that point. I'm not certain if there was a presidential decision, but it was the board's decision, board's position at the time. But its position is it doesn't get Chevron deference unless it's encapsulated in a certain way. Yes, yes. And so the- For our deference. I don't know which we're working with. Anyway. Well, there is no substantive difference between the regulation and the statute. That is the government's position, and the board has recognized that as much as well. Well, Castro Lopez looks like it was, for some reason, was focusing on the regulation. I don't know why. Anyway, thank you, unless you have more to say. Yes, I actually would like to note that there is a pending case in this court. Jose Luis Pena versus Sessions, docket number 16-73386. And that one does address the Castro Lopez. Have you been arguing? No. The government's brief was filed September 8th. What good is that going to do us? Excuse me, Your Honor? What good is that going to do us? Oh, no, I just wanted to let you know that that was a related case. I could not include that in my brief since this related case was filed after briefing was completed in this case in 2014. Okay, thank you. Thank you. Ordinarily, you would be entitled, it seems to me, to an opportunity to brief. Do you really want it? I mean, is there anything you're going to say that might be useful? We would like the opportunity to brief. Okay. If the court would provide it, just am I allowed to? Well, you would ask for a rematch to the board, and that I don't understand, because if Castro Lopez is right, there's nothing really to apply. The board couldn't do anything different than what it's already said, right? You'd have to persuade the board to change its mind and reverse its prior decision. That's correct. You don't really want us to send it back to the board, do you? Well, we would also take briefing in front of you, if that is... You'll address the brand X problem? We'll address brand X. I did want to point out just a couple points, if I'm allowed to, in response to the government's attorney. One, in Castro Lopez, the board actually reviewed the regulation, but cited, noted that it was identical to the statute. Just wanted to clarify that point. Also, while this court has precedent in Aragon-Salazar, that for non-stringent suspension under NACARA, that the good moral character and the physical presence are coterminous. I don't believe that's been extended to the stringent form of NACARA. The anomaly that he suggests wouldn't necessarily happen? Not necessarily. At least, it hasn't been... I don't believe it's been reached by precedent in this court. Okay. Anything else? Okay. Thank you. Thank you both for your arguments. I must say that both of you could have done better with updating the legal situation before you got here, i.e., you could have... Maybe we could have done better and asked you to brief this, but you might have done so, or at least asked us to do so, both of you. Thank you. The case of Campos-Hernandez v. Sessions is submitted. I'm going to go to the last case of the day.
judges: Berzon, Bybee, Gleason